UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | MDL 4:08-md-1994 |
| VISTAPRINT CORP MARKETING | § | |
| AND SALES PRACTICES LITIGATION | § | CONSOLIDATED |
| | § | CLASS ACTION COMPLAINT |
| This Document Applies To: | § | |
| ALL ACTIONS | § | Jury Trial Demanded |

Plaintiffs, Deloris Gordon, Kevin Woolley, Renee West, and Laurel Hudson,

by their attorneys, for their consolidated class action complaint, allege as follows:[1]

## Nature of this Case

1.      This action seeks to redress a deceptive and otherwise improper

business practice that Defendants Adaptive Marketing, LLC ("Adaptive Marketing")

and its parent company Vertrue, Inc. ("Vertrue"), along with VistaPrint USA, Inc.

("VistaPrint USA") and its parent company VistaPrint Limited ("VistaPrint Ltd." or

collectively "VistaPrint") (collectively "Defendants"), are perpetrating; specifically,

the practice of imposing unauthorized charges upon unsuspecting consumers who

order services or merchandise from VistaPrint and whose personal and confidential

credit card and bank account information is then accessed by Adaptive Marketing

and Vertrue without Plaintiffs' or the Class' prior permission.

---

[1] Certain Plaintiffs in the actions consolidated herein are not set forth as named plaintiffs in this consolidated complaint.  Those plaintiffs are not waiving or dismissing any rights.  The Plaintiffs named herein are adequate to represent the Class and to assert the claims contained herein.

2.      Defendants' business models are based on gaining access to confidential credit card and bank account information in order to charge consumers fees for worthless "memberships" and "services" that Plaintiffs and other Class members never desired or authorized.  By doing so, Defendants have established one of the largest unauthorized consumer billing operations in the United States through the placement of internet advertising on various legitimate (and illegitimate) websites.  VistaPrint's advertisements purport to sell graphic design and customized printed products, while Vertrue and Adaptive Marketing purport to sell membership programs that provide discounts on various consumer goods and services.  Because there is no legitimate demand for Adaptive Marketing's membership programs, VistaPrint's internet websites and advertisements serve as a pretext for gaining access to consumers' confidential financial information in order to charge unauthorized fees.

3.      In fact, consumers almost never legitimately join any of Vertrue and Adaptive Marketing's various membership programs, nor do they authorize Defendants Vertrue and Adaptive Marketing to charge their credit cards or debit from their bank accounts any monies.  When consumers contact any of the Defendants to request that they remove and refund the unauthorized fees charged to their credit cards, they are given the "runaround", and are unable to obtain refunds of the unauthorized charges.

4.      Thus, as a result of Defendants' deceptive and improper actions,

consumers, such as Plaintiffs, have been charged unauthorized fees, resulting in Defendants' improper and unlawful monetary gain and benefit.

5.     This suit is brought pursuant to the Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. §§ 1693 *et seq.*, the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. §§ 2510 *et seq.*, the consumer fraud statutes of the Commonwealth of Massachusetts, and common law, on behalf of a nationwide class of all persons who were deceptively charged fees or interest by Defendants, or any one of their subsidiaries, without first obtaining Plaintiffs' and the Class' prior authorization or consent, during the period from January 1, 2004, to the present.  It seeks, inter alia, compensatory damages, including, but not limited to, a refund of all unauthorized fees charged to consumers; reimbursement of expenses, interest and fees incurred by Class members as a result of Defendants' scheme; attorneys' fees; and the costs of this suit.

## Jurisdiction and Venue

6.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1693m.  This is an action for violation of 15 U.S.C. §§ 1693 *et seq.* and 18 U.S.C. § 2510.

7.     Jurisdiction in this civil action is also authorized pursuant to 28 U.S.C. § 1332(d), as minimal diversity exists, there are more than 100 class members, and the amount in controversy is in excess of $5 million.

8.     This Court has supplemental jurisdiction over Plaintiffs' state statutory

3

and common law causes of action pursuant to 28 U.S.C. § 1367(a).

9.      Venue is proper in this district pursuant to the United States Judicial

Panel on Multidistrict Litigation ("Panel") Transfer Order, dated December 11, 2008,

wherein the Panel assigned all Related Cases to the Court herein for coordinated

or consolidation proceedings.

## Parties

10.     Plaintiff Deloris Gordon is a citizen and resident of the State of

Mississippi, County of Bolivar.  Without Ms. Gordon's authorization or knowledge,

Defendants Vertrue and Adaptive Marketing conspired with VistaPrint to bill Ms.

Gordon's credit card.

11.     Plaintiff Kevin Woolley is a citizen and resident of the State of Texas,

County of Harris.  Without Mr. Woolley's authorization or knowledge, Defendants

Vertrue and Adaptive Marketing conspired with VistaPrint to bill Mr. Woolley's credit

card.

12.     Plaintiff Renee West is a citizen and resident of the State of New

Jersey, County of Middlesex.  Without Ms. West's authorization or knowledge,

Defendants Vertrue and Adaptive Marketing conspired with VistaPrint to bill Ms.

West's debit card.

13.     Plaintiff Laurel Hudson is a citizen and resident of the State of

Massachusetts, County of Bristol.  Without Ms. Hudson's authorization or

knowledge, Defendants Vertrue and Adaptive Marketing conspired with VistaPrint

to bill Ms. Hudson's debit card.

14.    Defendant Adaptive Marketing, LLC is a limited liability company established under the laws of the State of Delaware, with its principal place of business located in Norwalk, Connecticut.

15.    Defendant Vertrue, Inc. is a corporation established under the laws of the State of Delaware, with its principal place of business located in Norwalk, Connecticut.

16.    Defendant VistaPrint Limited is a corporation established under the laws of Bermuda, with its principal place of business located in Lexington, Massachusetts.

17.    Defendant VistaPrint USA, Inc. is a corporation established under the laws of the State of Delaware, with its principal place of business located in Lexington, Massachusetts.

18.    Defendants do business throughout the United States, including through operating and maintenance of interactive websites -- *vistaprint.com, adaptivemarketing.com, vertrue.com* and *shopping-essentials.com* -- accessible to consumers in, and residents of, the United States.

## Operative Facts

### A.    Defendants' Deceptive Sales And Business Practices

19.    Defendant VistaPrint Limited is a publicly traded Internet services company that sells graphic design services and customized printed products to

consumers.  These products are sold by VistaPrint Limited's wholly owned subsidiaries, including Defendant VistaPrint USA, Inc.

20.     Defendant VistaPrint USA, Inc., like its parent company VistaPrint Limited, sells graphic design services and customized printed products to consumers and small businesses.  VistaPrint USA is located in the same building as VistaPrint Limited, shares personnel with VistaPrint Limited, and markets the identical graphic design and printed products as VistaPrint Limited.  There exists a unity of interest and ownership between VistaPrint Limited and VistaPrint USA, and because VistaPrint USA is controlled, managed and operated by VistaPrint Limited without regard for corporate individuality, each is the alter ego of the other.

21.     Defendant Vertrue is a publicly traded Internet marketing services company that sells consumer-based membership and loyalty programs offered by Vertrue's wholly owned subsidiaries, including Defendant Adaptive Marketing.

22.     Defendant Adaptive Marketing, like its parent company Vertrue, Inc., sells "membership programs" that purport to provide consumers with access to discounts on various consumer goods and services.  Adaptive Marketing is located in the same building as Vertrue, Inc., shares personnel with Vertrue, Inc., and markets the identical "membership programs" as Vertrue, Inc.  There exists a unity of interest and ownership between Vertrue, Inc. and Adaptative Marketing, and because Adaptive Marketing is controlled, managed and operated by Vertrue, Inc. without regard for corporate individuality, each is the alter ego of the other.

6

23.    For example, Defendant Vertrue markets a "membership program" named "Shopping-Essentials," which can be accessed at *shopping-essentials.com*. Vertrue markets Shopping-Essentials through its wholly owned subsidiary and alter ego Adaptive Marketing.  The Adaptive Marketing website claims that membership in Shopping-Essentials purports to offer consumers savings "on everything from fashion and accessories to fitness and beauty, home decor and much more."

24.    Defendants Vertrue and Adaptive Marketing market and sell their various membership programs, including membership in Shopping-Essentials, on many web sites, in particular on Defendants' VistaPrint Limited's and VistaPrint USA's website -- *vistaprint.com* -- and enroll consumers visiting VistaPrint's website in bogus "membership programs" without consumers' knowledge or consent. Put differently, the success of all four of Defendants' business models depends on "cramming" -- a practice of imposing unauthorized charges -- which all Defendants are able to do when consumers innocently visit and order printing products from *vistaprint.com*.

25.    Defendants do not send bills to consumers requesting payment or authorization for payment.  Rather, Defendants collect fees by charging, without prior authorization, consumers' credit cards, bank accounts, and debit cards. Consumers are charged monthly fees that range from $12.95 and $19.95 per month for sham "memberships" which they never ordered.

26.    The sequence of events upon which Plaintiffs predicate their claims

are clear:  a person orders business cards or other printed materials from *vistaprint.com* and pays for the order with a debit or credit card.  To proceed through the purchasing process, each Class member must provide *vistaprint.com* with personal information including his or her name, debit or card number and expiration date.  Thereafter, at least one, but usually several, unauthorized charges appear on each Class member's debit or credit card purportedly for one of Vertrue's or Adaptive Marketing's worthless "membership programs".  None of the charges are authorized, and Defendants do not receive prior permission before charging each Class member's debit or credit card.

27.    Defendants have been able to engage in the above referenced consumer fraud by deceptively manipulating the online process by which Plaintiffs and other Class members order products from *vistaprint.com*.  For example, VistaPrint's web landing page after making a purchase -- the first web page Plaintiffs and other Class members encounter after placing an order for VistaPrint merchandise -- offers a membership in VistaPrint Rewards, and proclaims in bold letters on the top of the page that membership in VistaPrint Rewards is being offered as a "special thank you" for ordering merchandise from VistaPrint, and that the recipient should "please complete your survey and claim your reward." Plaintiffs, like thousands of other VistaPrint customers, were deceived by this language, and believed that in order to complete their order for merchandise and proceed to checkout, they merely had to "complete a survey," and that once they

did, they would be awarded a "$10.00 Cash Back Award . . ." on their order.

28.     It is clear that this web page -- which every Plaintiff and VistaPrint customer must navigate to place an order for VistaPrint merchandise -- is deceptive. In bold, large lettering, the landing page proclaims that each customer is being offered a free cash back reward for placing an order.  Each customer must simply fill out a "Member Survey."  There is an additional request for an email address, and below it, a large box with the word "Yes" is prominently displayed.  By contrast, the words "No Thanks" is written in a small, tiny font, and does not have an emblem or button on which to click.  Indeed, "No Thanks" may reasonably be read to offer two options: not to complete the "Member Survey" or not to accept the "$10.00 Cash Back Reward."  There is <u>no</u> indication, however, that it is an option not to accept enrollment in the VistaPrint Rewards program.  In fact, Plaintiffs in all the Related Actions believed they were compelled to fill out the survey simply to proceed to check out and place their order for merchandise.

29.     At that point in the merchandise order process, each of the Plaintiffs in the Related Actions and other Class members are then re-directed to an Adaptive Marketing web landing page which is nearly identical in format to the VistaPrint Rewards landing page described above.  Once again, however, Plaintiffs and other Class members are deceived into thinking that VistaPrint is now offering a second free "$10.00 Cash Back Reward" simply for placing an order.  They are asked to re-enter their email address and click on a large and prominently displayed "Yes" box

to collect their "Extra-Special Thank You" from VistaPrint.  Once again, Plaintiffs reasonably believed that in order to proceed to checkout and complete their VistaPrint order, they had to click on this "Yes" box.  The "No Thanks" option, like the "No Thanks" option on the previous VistaPrint Rewards landing page, was written in small, difficult to read lettering, and did not have a button on which to click.  Plaintiffs were deceived once more into thinking that they were going to receive an additional $10.00 off their purchase order, and had no idea that they were in fact enrolling in a worthless "Adaptive Marketing membership."  Plaintiffs believed -- as any reasonable consumer would -- that they had to enter and re-enter their email address in order to receive their ordered merchandise and get $20.00 subtracted from the cost of their purchase.

30.     Moreover, Plaintiffs repeatedly attempted to, and did at times successfully, contact Defendants requesting that they remove and credit their debit or credit cards for the unauthorized charges.  Not surprisingly, Plaintiffs' requests were ignored.  In fact, some Plaintiffs were compelled to cancel their debit or credit cards in order to stop Defendants from continuing their practice of charging unauthorized fees.  It was only after Plaintiffs filed lawsuits against Defendants that some of them were credited for the unauthorized charges.

31.     As explained above, Plaintiffs seek to redress the unfair and deceptive manner in which Plaintiffs were deceptively enrolled in both a VistaPrint Rewards program and a worthless Adaptive Marketing membership, and charged monthly

"membership" fees to which they had not knowingly consented.  In fact, there have
been numerous consumer complaints to various Federal and State authorities
about Defendants, and web sites are full of consumers who have complained about
Defendants' unfair and deceptive practices, including the fact that when consumers
visit and/or order products from the VistaPrint website, they are assessed
unauthorized charges from both VistaPrint and one of Defendants' Vertrue's and
Adaptive Marketing's marks, including but not limited to, Shopping-Essentials and
other membership and discount programs.

      **B.**     **Plaintiffs Are Saddled With Unauthorized Charges**

          **1.**     **Deloris Gordon**

32.    On or about August 8, 2007, Plaintiff Gordon ordered business cards
from *vistaprint.com* and paid for her order with a credit card.  To proceed through
the purchasing process, Plaintiff Gordon provided *vistaprint.com* with personal
information including her name, credit card number and its expiration date.

33.    When Ms. Gordon accessed the VistaPrint website, the initial landing
page proclaimed in bold letters on the top of the page that membership in VistaPrint
Rewards is being offered as a "special thank you" for ordering merchandise from
VistaPrint, and that the recipient should "please complete your survey and claim
your reward."  Ms. Gordon, like all the Plaintiffs and other Class members, was
deceived by this language, and believed that in order to complete her order for
merchandise and proceed to checkout, she merely had to "complete a survey," and

that once she did, she would be awarded a "$10.00 Cash Back Award . . ." on her order.

34.    Ms. Gordon was then redirected to a Shopping-Essentials web landing page which is nearly identical in format to the VistaPrint Rewards landing page. Once again, however, Ms. Gordon was deceived into thinking that VistaPrint was now offering a second free "$10.00 Cash Back Reward" simply for placing her order.  She was asked to re-enter her email address and click on a large and prominently displayed "Yes" box to collect her "Extra-Special Thank You" from VistaPrint.  Ms. Gordon reasonably believed that in order to proceed to checkout and complete her VistaPrint order, she had to click on this "Yes" box.  The "No Thanks" option, like the "No Thanks" option on the previous VistaPrint Rewards landing page, was written in small, difficult to read lettering, and did not have a button on which to click.  Once again, Ms. Gordon was deceived into thinking that she was going to receive an additional $10.00 off her purchase order, and had no idea that she was in fact enrolling in a Shopping-Essentials membership.  She believed -- as any reasonable consumer would -- that she had to enter and re-enter her email address in order to receive her ordered merchandise and, at this point, get $20.00 subtracted from the cost of her purchase.

35.    Since that original purchase, six unauthorized charges have appeared on Plaintiff Gordon's credit card.  Two of those charges, each for $14.95, are dated September 4, 2007.  One charge is billed to VistaPrint and the other charge is billed

to Shopping-Essentials.  Both charges were not authorized by Plaintiff Gordon, and Defendants did not receive prior permission from Plaintiff Gordon before charging her credit card.

36.     Thereafter, on October 3, 2007, November 2, 2007, December 4, 2007 and January 2, 2008, four additional charges, each in the amount of $14.95, were billed to Plaintiff Gordon's credit card.  All four charges are credited to "Shopping-Essentials," purportedly as payment for "membership" fees in Shopping-Essentials.

37.     Defendants Vertrue and Adaptive Marketing, with the full knowledge and consent of Defendants Vista Print Limited and VistaPrint USA, enrolled Plaintiff Gordon in Shopping-Essentials without her knowledge or consent.  Plaintiff Gordon did not receive any bills requesting payment or authorization for payment.  Nor did she receive any documentation regarding her enrollment in the Shopping-Essentials membership program and has derived no benefit from her Shopping-Essentials "membership."

38.     Plaintiff Gordon repeatedly attempted to, and did at times successfully, contact VistaPrint and Shopping-Essentials requesting that they remove and credit her credit card the unauthorized charges.  The few times Plaintiff Gordon was able to get through to Defendants' customer service departments and speak with a live person, she was told that the charges would be credited, and that she would no longer be charged any fees in the future.  In fact, Ms. Gordon sent an email to Shopping-Essentials just two days after receiving her first debit card bill.  The email

13

stated "This is the second time I have requested that you discontinue a service which I did not know I signed up for -- WILL YOU PLEASE STOP."  Ms. Gordon's demand to Defendants' to stop their deceptive practices was ignored, and she of course did not receive a refund, nor did the unauthorized charges stop.

39.    Indeed, Defendants did not credit Plaintiff Gordon's credit card for the unauthorized charges, and in fact, continued to bill Plaintiff Gordon's credit card without her prior authorization.  After six months of attempting to stop the monthly charges and obtain a refund of the fees charged, Plaintiff Gordon was compelled to cancel her credit card in order to stop Defendants from continuing their practice of charging unauthorized fees.  Moreover, Ms. Gordon never received a "Cash Back Reward," which might have been the consideration required to enroll Ms. Gordon in the memberships at issue, had she enrolled in them legitimately and with her full consent, which she did not.

40.    The imposition of unauthorized charges and assessment totaling $89.70 represents a deliberate profit-making scheme by Defendants.  Sham charges for printing products never ordered and enrollment in sham membership programs provide Defendants with a consistent, lucrative and substantial source of revenue.

### 2.    Kevin Woolley

41.    On or about March 23, 2006, Plaintiff Woolley ordered business cards from *vistaprint.com* and paid for his order with a credit card through *vistaprint.com*.

14

To proceed through the purchasing process, Plaintiff Woolley provided VistaPrint with personal information including his name, his credit card number and the card's expiration date.

42.     Since that original purchase, Defendants have been making monthly charges to Plaintiff Woolley's credit card for a Membership Program Mr. Woolley was enrolled in deceptively by Defendants without his knowledge or consent.

43.     Plaintiff Woolley received no bills from Defendants requesting payment or authorization for payment.  Mr. Woolley received no copies of the billing transactions or authorizations for payment.  Nor did Plaintiff Woolley receive documentation regarding his enrollment in the Membership Programs, and he has derived no benefit from his enrollment in the Membership Programs.

### 3.     Renee West

44.     In early May of 2008, Plaintiff West ordered business cards from *vistaprint.com* and paid for her order with a bank debit card through *vistaprint.com*. To proceed through the purchasing process, Plaintiff West provided VistaPrint with personal information including her name, her bank debit card number and the card's expiration date.

45.     Since that original purchase, Defendants have been making monthly debits from Plaintiff West's bank account for two Membership Programs Ms. West was enrolled in by deceptively by Defendants without her knowledge or consent.

46.     Plaintiff West received no bills from Defendants requesting payment or

15

authorization for payment.  Ms. West received no copies of the billing transactions or authorizations for payment.  Nor did Plaintiff West receive documentation regarding her enrollment in the Membership Programs, and she has derived no benefit from her enrollment in the Membership Programs.

### 4.    **Laurel Hudson**

47.    Plaintiff Hudson ordered business cards from *vistaprint.com* on September 21, 2006, and paid for her order with a bank debit card through *vistaprint.com*.  To proceed through the purchasing process, Plaintiff Hudson provided VistaPrint with personal information including her name, her bank debit card number and the card's expiration date.

48.    Since that original purchase, Defendants have been making monthly debits from Plaintiff Hudson's bank account for a Membership Program that Ms. Hudson was enrolled in deceptively by Defendants without her knowledge or consent.

49.    Plaintiff Hudson received no bills from Defendants requesting payment or authorization for payment.  Ms. Hudson received no copies of the billing transactions or authorizations for payment.  Nor did Plaintiff Hudson receive documentation regarding her enrollment in the Membership Programs, and she has derived no benefit from her enrollment in the Membership Programs.

### **Class Action Allegations**

50.    Plaintiffs bring this action on their own behalf and additionally, pursuant

16

to Rule 23 of the Federal Rules of Civil Procedure, on behalf of a nationwide class (the "Class") of all persons in the Unites States whose credit card, bank debit card, or bank account information was obtained deceptively and/or intercepted by Defendants, and whose credit cards, bank debit cards or bank accounts were charged fees or interest by Defendants for merchandise and/or services and/or membership programs never authorized, consented to, ordered or requested, during the period from January 1, 2004, to the present.

51.     Excluded from the Class are Defendants; any parent, subsidiary, or affiliate of Defendants; any entity in which Defendants have or had a controlling interest, or which Defendants otherwise control or controlled; and any officer, director, employee, legal representative, predecessor, successor, or assignee of Defendants.

52.     This action is brought as a class action for the following reasons:

a.     The Class consists of thousands of persons and is therefore so numerous that joinder of all members, whether otherwise required or permitted, is impracticable;

b.     There are questions of law or fact common to the Class that predominate over any questions affecting only individual members, including:

i.     whether Defendants violated the Electronic Communications Privacy Act, 18 U.S.C. §2510;

ii.     whether Defendants violated the Electronic Funds

17

Transfer Act, 15 U.S.C. §§ 1693 *et seq.*;

    iii. whether Defendants violated the Massachusetts Unfair Trade Practices Act, Mass. Gen. Laws c. 93A § 2(a), *et seq.*, or alternatively, the consumer protection laws of other states;

    iv. whether Defendants are being unjustly enriched by, among other things, charging Plaintiffs and the Class unauthorized fees;

    v. whether Defendants unlawfully converted Plaintiffs' and the Class' monies for their own benefit;

    vi. whether Plaintiffs and the Class have sustained damages and, if so, the proper measure thereof; and

    vii. whether Defendants should be enjoined from the continued practices and policies with respect to the imposition of unauthorized charges and fees upon unsuspecting consumers.

  c. The claims asserted by Plaintiffs are typical of the claims of the members of the Class;

  d. Plaintiffs will fairly and adequately protect the interests of the Class, and Plaintiffs have retained attorneys experienced in class and complex litigation, including related litigation involving consumer fraud;

  e. A class action is superior to other available methods for the fair and efficient adjudication of the controversy, for at least the following reasons:

i.       Absent a class action, Class members as a practical matter will be unable to obtain redress, Defendants' violations of their legal obligations will continue without remedy, additional consumers and purchasers will be harmed, and Defendants will continue to retain their ill-gotten gains;

ii.       It would be a substantial hardship for most individual members of the Class if they were forced to prosecute individual actions;

iii.       When the liability of Defendants has been adjudicated, the Court will be able to determine the claims of all members of the Class;

iv.       A class action will permit an orderly and expeditious administration of Class claims, foster economies of time, effort, and expense and ensure uniformity of decisions; and

v.       The lawsuit presents no difficulties that would impede its management by the Court as a class action.

f.       Defendants have acted on grounds generally applicable to Class members, making class-wide monetary and injunctive relief appropriate; and

g.       The prosecution of separate actions by individual members of the Class would create a risk of incompatible standards of conduct for Defendants and of inconsistent or varying adjudications for all parties.

53.     Defendants' violations of 15 U.S.C. §§ 1693 *et seq.*, 18 U.S.C. § 2510 and the Massachusetts consumer protections statutes are applicable to all

members of the Class, and Plaintiffs are entitled to have Defendants enjoined from engaging in illegal, deceptive and unconscionable conduct in the future.

**FIRST CAUSE OF ACTION**
**(Violation of the Electronic Funds Transfer Act, 15 U.S.C. § 1693 *et seq.*)**

54.     Plaintiffs repeat and re-allege the allegations contained in Paragraphs 1 through 53 above as if fully set forth herein.

55.     The Electronic Funds Transfer Act ("EFTA") provides a basic framework establishing the rights, liabilities, and responsibilities of participants in an electronic fund transfer system. 15 U.S.C. § 1693.

56.     Plaintiffs each maintained an "account" as that term is defined in 15 U.S.C. § 1693a(2), and are "consumers" as that term is defined in 15 U.S.C. §1693a(5).

57.     Defendants engaged in "unauthorized electronic fund transfers," as that term is defined in 15 U.S.C. § 1693a(11), by charging Plaintiffs' credit and debit cards without their authorization.

58.     The EFTA provides that "[a] preauthorized electronic fund transfer from a consumer's account may be authorized by the consumer only in writing, and copy of such authorization shall be provided to the consumer when made." 15 U.S.C. § 1693e(a). In the case of preauthorized transfers from a consumer's account to the same person which may vary in amount, ... the designated payee shall, prior to such transfer, provide reasonable advance notice to the consumer, in accordance

with the regulations of the Board, of the amount to be transferred and the scheduled date of the transfer."  15 U.S.C. § 1693e(b).

59.    The EFTA's implementing regulations, known as Regulation E and codified at 12 C.F.R. §§ 205 *et seq.*, provide: "Preauthorized electronic fund transfers from a consumer's account may be authorized only by a writing signed or similarly authenticated by the consumer.  The person that obtains the authorization shall provide a copy to the consumer."  12 C.F.R. § 205.1(d).  According to the Official Staff Interpretations ("OSI") of Regulation E, the EFTA's requirement that electronic fund transfers "be authorized by the consumer 'only in writing' cannot be met by a payee's signing a written authorization on the consumer's behalf with only an oral authorization from the consumer."  Regulation E, Supp. I, Part 10(b), ¶3. When "'a third-party payee fails to obtain the authorization in writing or fails to give a copy to the consumer, ... it is the third-party payee that is in violation of the regulation."  Regulation E, Supp. I, Part 10(b), ¶ 2.

60.    Defendants violated the EFTA because they initiated electronic fund transfers from Plaintiffs' and the Class' accounts without obtaining prior written authorization.  Moreover, in further violation of the EFTA, Defendants did not provide Plaintiffs and the Class with copies of their authorizations or provide reasonable advance notice to Plaintiffs and the Class of the amount to be transferred and the scheduled date of the transfer.

61.    Accordingly, pursuant to 15 U.S.C. § 1693m, Plaintiffs and the Class

seek damages, statutory damages, costs of suit, including reasonable attorneys'

fees, and such other further relief as the Court deems appropriate.

## <u>SECOND CAUSE OF ACTION</u>
**(Violation of the Electronic Communications Privacy Act, 18 U.S.C. § 2510)**

62.     Plaintiffs repeat and re-allege the allegations contained in Paragraphs

1 through 61 above as if fully set forth herein.

63.     The transmission of data by Plaintiffs and the Class between their

computers and various internet websites, including but not limited to electronic

funds transfer information stored by a financial institution, constitutes "electronic

communications" within the meaning of 18 U.S.C. § 2510.

64.     Defendants intentionally obtained and/or intercepted these electronic

communications without Plaintiffs' or the Class' knowledge, consent or

authorization.

65.     As described herein, Defendants used the intercepted electronic

communications for an unlawful purpose.

66.     Pursuant to 18 U.S.C. § 2520, Plaintiffs and the Class are entitled to

preliminary, equitable and declaratory relief, in addition to statutory damages of the

greater of $10,000 or $100 per day for each day of violation, actual and punitive

damages, reasonable attorneys' fees, and Defendants' profits obtained from the

above-described violations.

## THIRD CAUSE OF ACTION
### (Unjust Enrichment)

67.    Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through 66 above as if fully set forth herein.

68.    By engaging in the conduct described above, Defendants have unjustly enriched themselves at the expense of Plaintiffs and the Class and are required, in equity and good conscience, to compensate Plaintiffs and the Class for damages suffered as a result of Defendants' actions.

69.    Defendants knowingly and willingly accepted monetary benefits from Plaintiffs and the Class, while providing Plaintiffs and the Class with services and/or membership in programs which were worthless and/or never authorized or consented to by Plaintiffs and the Class.

70.    Under the circumstances described herein, it is inequitable for Defendants to retain the full monetary benefit at the expenses of Plaintiffs and the Class.

71.    By engaging in the conduct described above, Defendants have unjustly enriched themselves at the expense of Plaintiffs and the Class and are required, in equity and good conscience, to compensate Plaintiffs and the Class for harm suffered as a result of Defendants' actions.

72.    By reason of the foregoing, Defendants are liable to Plaintiffs and the Class for damages incurred as a result of Defendants' actions, the amount of such

damages to be determined at trial.

## FOURTH CAUSE OF ACTION
### (Conversion)

73.     Plaintiffs repeat and re-alleges the allegations contained in Paragraphs 1 through 72 above as if fully set forth herein.

74.     Defendants, without Plaintiffs' and the Class' permission, unlawfully and wrongfully seized possession of monies rightfully belonging to Plaintiffs and the Class through unlawful acts and conduct, as described herein.

75.     Thus, Defendants have converted Plaintiffs' and the Class' monies for their own use and benefit, and have accepted and retained Plaintiffs' and the Class' monies in their own name, under Defendants' exclusive custody and control.

76.     As a result of Defendants' unlawful acts and conduct, Plaintiffs and the Class were deprived of the use of their money that was unlawfully converted by Defendants, and are therefore entitled to restoration of their money, along with interest thereon from the date the money was converted by Defendants to the date of judgment, compensatory damages and punitive damages.

## FIFTH CAUSE OF ACTION
### (Money Had & Received)

77.     Plaintiffs repeat and re-alleges the allegations contained in Paragraphs 1 through 76 above as if fully set forth herein.

78.     As a result of the conduct alleged herein, Defendants improperly received monies from Plaintiffs and the Class they were not legally entitled to

receive.

79.     Plaintiffs and members of the Class have a claim for improperly paid fees for the Membership Programs.

80.     Equity and good conscience require that Defendants ought to pay over such additional monies, described above, to Plaintiffs and the Class.

81.     As a direct and proximate result of Defendants' inappropriate practices, Plaintiffs and members of the Class have suffered injury and are entitled to reimbursement, restitution and disgorgement in the amount necessary to restore them to the position they would have been in if Defendants had not improperly collected and retained the aforementioned fees.

## SIXTH CAUSE OF ACTION
### (Violation of Massachusetts Unfair Trade Practices Act)

82.     Plaintiffs repeat and re-allege the allegations contained in Paragraphs 1 through 81 above as if fully set forth herein.

83.     Through their conduct described above, Defendants have engaged in deceptive acts and practices in violation of the Massachusetts Unfair Trade Practices Act,  Mass. Gen. Laws c. 93A § 2, *et seq.*("MUTPA"), whose stated terms and intent is to protect consumers from unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.

84.     Defendants' unfair or deceptive practices were directed from, and occurred primarily and substantially in, Massachusetts as VistaPrint is

headquartered in Massachusetts and its computer systems are located within Massachusetts.

85.    Plaintiffs made a sufficient demand to Defendants to cease their unfair and deceptive acts or practices.

86.    Plaintiffs and the Class have suffered an ascertainable loss of money or property as a result of Defendants' actions.

87.    By reason of the foregoing, Defendants have violated MUTPA and are liable to Plaintiffs and the Class, pursuant to  Mass. Gen. Laws c. 93A § 2, *et seq.*, for the damages that they have suffered as a result of Defendants' actions, the amount of such damages to be determined at trial, plus attorneys' fees.

88.    Alternatively, in the event that the Court does not determine that Defendants' actions are governed by the laws of Massachusetts, Plaintiffs reserve the right to assert claims pursuant to the consumer protections laws of various other States.

### SEVENTH CAUSE OF ACTION
**(Declaratory Relief Pursuant to 28 U.S.C. §§ 2201 *et seq.*)**

89.    Plaintiffs repeat and re-allege the allegations contained in Paragraphs 1 through 88 above as if fully set forth herein.

90.    An actual controversy, over which this Court has jurisdiction, has arisen and now exists between the parties relating to the legal rights and duties of Plaintiffs and Defendants for which Plaintiffs desire a declaration of rights.

26

91.    A declaratory judgment is necessary to determine Plaintiffs' and Class members' rights in connection with unauthorized charges imposed upon Plaintiffs and the Class for Defendants' purported membership programs, including, among other things, a declaration that all Defendants have violated 15 U.S.C. §§ 1693 *et seq.* and its implementing regulation, Regulation E (EFTA); 18 U.S.C. § 2510 (ECPA); and a declaration that all Defendants have violated the Massachusetts consumer protection statute as alleged above, or alternatively, the consumer protection statutes of various States.

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment against Defendants as follows:

1.    Certifying this action as a class action, with a class as defined above;

2.    On Plaintiffs' First Cause of Action, awarding against Defendants the damages that Plaintiffs and the other members of the Class have suffered as a result of Defendants' actions, the amount of such damages to be determined at trial, plus statutory damages, attorneys' fees and costs;

3.    On Plaintiffs' Second Cause of Action, awarding against Defendants the damages that Plaintiffs and the other members of the Class have suffered as a result of Defendants' actions, the amount of such damages to be determined at trial, plus statutory damages, punitive damages, attorneys' fees and costs;

4.    On Plaintiffs' Third Cause of Action, awarding against Defendants the damages that Plaintiffs and the other members of the Class have suffered as a

27

result of Defendants' actions, the amount of such damages to be determined at trial, plus attorneys' fees and costs;

5.      On Plaintiffs' Fourth Cause of Action, awarding against Defendants the damages that Plaintiffs and the other members of the Class have suffered as a result of Defendants' actions, the amount of such damages to be determined at trial;

6.      On Plaintiffs' Fifth Cause of Action, awarding against Defendants the damages that Plaintiffs and the other members of the Class have suffered as a result of Defendants' actions, the amount of such damages to be determined at trial;

7.       On Plaintiffs' Sixth Cause of Action, awarding against Defendants the damages that Plaintiffs and the other members of the Class have suffered as a result of Defendants' actions, the amount of such damages to be determined at trial;

8.       Declaring that Defendants' practice of unauthorized credit and debit card charges is misleading, deceptive and improper, preliminarily and permanently enjoining Defendants from continuing their deceptive policies relating to the practice of deceptively charging Plaintiffs and the Class fees without prior authorization, ordering Defendants to disgorge all profits earned in connection with the improper and impermissible expropriation of fees through their policy and practice of charging Plaintiffs' and the Class' credit and debit cards, without consent and prior

28

authorization, and ordering Defendants to take immediately all steps reasonably

necessary to disclose their policies of charging fees without prior authorization and

consent;

9.      Awarding Plaintiffs and the Class interest, costs and attorneys' fees;

and

10.      Awarding Plaintiffs and the Class such other and further relief as this

Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38 of the Fed.R.Civ.P., Plaintiffs hereby demand a trial by jury.

DATED:  March 2, 2009

Respectfully submitted,

FEDERMAN & SHERWOOD

By:    s/ William B. Federman
       William B. Federman, S.D. TX#21540
       Texas Bar No. 00794935
       Jennifer F. Sherrill, S.D. TX # 35609
       10205 North Pennsylvania Avenue
       Oklahoma City, OK  73120
       Telephone:  (405) 235-1560
       Facsimile: (405) 239-2112
       - and –
       2926 Maple Avenue, Suite 200
       Dallas, TX  75201

       Attorney in Charge

       and

29

MEISELMAN, DENLEA, PACKMAN,
CARTON & EBERZ P.C.
Jeffrey I. Carton, Esq.
Jerome Noll, Esq.
Christine M. Ford, Esq.
1311 Mamaroneck Avenue
White Plains, New York 10605
(914) 517-5000

Attorneys for Plaintiffs

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing has been filed electronically with the U.S. District Court; has been sent electronically on March 2, 2009.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.  If a party is not given notice electronically through the Court's system a copy will be served by ordinary United States mail, first class postage prepaid, on March 2, 2009.


 s/ William B. Federman
William B. Federman