## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| VISTAPRINT CORP MARKETING | § | MDL 4:08-md-1994 |
| AND SALES PRACTICES | § | (This Order Relates to All Cases) |
| LITIGATION | § | |

## MEMORANDUM AND ORDER

This multidistrict litigation case is before the Court on the Motion to Dismiss [Doc. # 17] filed by Defendants Adaptive Marketing LLC and Vertrue Incorporated (collectively, "Adaptive") and the Motion to Dismiss [Doc. # 21] filed by Defendant VistaPrint USA, Inc. ("VistaPrint").[1]  Plaintiffs filed a Response [Doc. # 40], Adaptive and VistaPrint each filed a Reply [Docs. # 50, # 49 respectively].  Having reviewed the record and applied the relevant legal authorities, the Court **grants** both Motions to Dismiss.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs allege that they ordered business cards from the website "vistaprint.com" and paid for their orders with a debit or credit card.  Plaintiffs allege that, during the process of completing their purchases online, they were tricked into

---

[1]    Plaintiffs Deloris Gordon, Kevin Woolley, Renee West, and Laurel Hudson have voluntarily dismissed their claims against Defendant VistaPrint Limited.  *See* Voluntary Dismissal [Doc. # 58].  VistaPrint Limited has not been served and is dismissed pursuant to Rule 4(m) of the Federal Rules of Civil Procedure as to all other cases in this MDL.

enrolling in membership programs offered by VistaPrint Limited and/or VistaPrint USA, Inc. (collectively, "VistaPrint") or Adaptive.[2]  Plaintiffs allege that Defendants posted unauthorized charges to their debit or credit cards for the monthly fees associated with these membership programs, which Plaintiffs characterize as worthless.

Six related lawsuits filed in various federal district courts were transferred to this Court by the Judicial Panel on Multidistrict Litigation for consolidated pretrial proceedings.  Four of the named Plaintiffs – Deloris Gordon, Kevin Woolley, Renee West, and Laurel Hudson – filed a Consolidated Amended Complaint ("Complaint") [Doc. # 11].  In their Complaint, Plaintiffs allege that they ordered business cards from VistaPrint's website.  They also allege that, in connection with those purchases, Defendants deceived them into entering their email addresses and clicking on an oval with the word "Yes," resulting in charges to their credit or debit cards.  Plaintiffs claim that Defendants violated the Electronic Funds Transfer Act ("EFTA") and the Electronic Communications Privacy Act ("ECPA").  Plaintiffs also assert a common law claim for unjust enrichment, a common law claim for "money had and received," and a claim that Defendants violated the Massachusetts Unfair Trade Practices Act

---

[2]      The details of the relevant webpages will be described in greater detail in Section IV addressing Defendants' Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

("MUTPA").[3]  Plaintiffs seek "compensatory damages" including a refund of the allegedly unauthorized charges, attorneys' fees, costs, and related expenses.  Plaintiffs also seek a declaratory judgment that Defendants violated the EFTA, the ECPA, and the MUTPA.  Each of the claims is based on Plaintiffs' position that the websites at issue are deceptive.

In the pending Motions to Dismiss, Defendants argue that, as a matter of law, the websites are not deceptive and that Defendants cannot be held liable under any legal theory asserted by Plaintiffs.  Defendants also argue that the unjust enrichment and "money had and received claims" should be dismissed because the issues are addressed by a contract between Plaintiffs and Defendants.  Defendants also argue that the EFTA claims by Woolley and Gordon fail because the EFTA does not apply to credit card transactions, and that the EFTA claims of all Plaintiffs fail because the transfers were not "unauthorized electronic fund transfers" as defined by the EFTA.  Defendants argue that the ECPA claim fails because there was no "interception" as required by the statute.  Defendants move to dismiss the MUTPA claim because the website is not deceptive.  Defendants also challenge the standing of Woolley and Hudson because both Plaintiffs received full refunds prior to filing their lawsuits.

---

[3]     Plaintiffs also asserted a common law conversion claim, but have voluntarily dismissed that claim.  *See* Response [Doc. # 40], p. 20 n.8.

VistaPrint argues that forum selection and choice of laws provisions apply that require the case to be prosecuted in Bermuda with Bermuda law applying to all claims against it.  The Motions have been fully briefed and are ripe for decision.

## II.    ADDITIONAL PLAINTIFFS

In addition to the Plaintiffs named in the Consolidated Complaint, there are other Plaintiffs named in the member cases.  These named Plaintiffs take the position that the Court's ruling on the pending Motions to Dismiss will have no effect on their claims.  These Plaintiffs' argument, however, is without merit.  These Plaintiffs' lawsuits are member cases in this MDL.  The Consolidated Complaint and the Motions to Dismiss reflect clearly that they apply to "All Actions."  The Court's ruling on the Motions to Dismiss, as set forth in this Memorandum and Order, and the Court's Final Order apply to this MDL in its entirety and to all Plaintiffs named in the member cases.  *See, e.g., Meridia Prods. Liab. Litig. v. Abbott Labs.*, 447 F.3d 861, 869 (6th Cir. 2006).

## III.   RULE 12(b)(1) MOTION TO DISMISS

Defendants move to dismiss the claims of Woolley and Hudson because they received a full refund of all charges before they filed their lawsuits.   In the consolidated Complaint, there are four Plaintiffs, and Defendants do not challenge the standing of Gordon and West.  The presence of one plaintiff with standing is sufficient

to satisfy the standing requirement for all plaintiffs who present the same issues in the lawsuit. *See, e.g., General Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 402 n.22 (1982) (noting that even if one plaintiff lacks standing, the court has jurisdiction to entertain the common issues presented by all plaintiffs); *Watt v. Energy Action Educational Foundation*, 454 U.S. 151, 160 (1981) (holding that because one plaintiff has standing, the court would not consider the standing of the other plaintiffs); *Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 544 n.11 (5th Cir. 2008) (noting that because one plaintiff had standing, "the question whether the other Plaintiffs have standing is . . . of no consequence"). Because there is no challenge to the standing of Gordon and West, the Court need not determine whether Woolley and Hudson have standing. The Court denies the Motion to Dismiss the claims of Woolley and Hudson for lack of standing and considers the entire case on the merits.

## IV.   <u>RULE 12(b)(3) MOTION TO DISMISS</u>

VistaPrint has moved to dismiss pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure for improper venue. The dispositive question is whether the forum selection clause binds the parties to venue in Bermuda. Forum selection clauses are presumptively valid. *See Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595(1991); *M/S BREMEN v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972); *Mitsui & Co. (USA), Inc. v. Mira M/V*, 111 F.3d 33, 36 (5th Cir. 1997). A "forum selection

provision in a written contract is prima facie valid and enforceable unless the opposing party shows that enforcement would be unreasonable." *Kevlin Services, Inc. v. Lexington State Bank*, 46 F.3d 13, 15 (5th Cir. 1995); *see also Int'l Software Systems, Inc. v. Amplicon, Inc.*, 77 F.3d 112, 114 (1996). A contractual forum selection clause, if not unreasonable, will control where venue is otherwise legally proper for disputes among the contracting parties. *See In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989).

Plaintiffs argue that, even if the forum selection clause applies, it should not be enforced because they did not have notice of it and because enforcing the forum selection clause would deprive them of any remedy against VistaPrint USA. The party resisting the forum selection clause must make a strong showing that the clause is "unreasonable" before a court may decline to enforce the clause. *See Marinechance Shipping, Ltd. v. Sebastian*, 143 F.3d 216, 220 (5th Cir. 1998). Factors to consider when determining whether a forum selection clause is unreasonable include:

(1)  Whether the incorporation of the forum selection clause into the agreement was the product of fraud or overreaching;

(2)  Whether the party seeking to escape enforcement will for all practical purpose be deprived of his day in court because of grave inconvenience or unfairness of the selected forum;

(3)  Whether the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy;

(4)     Whether the enforcement of the forum selection clause would contravene a strong public policy of the forum state.

*See Haynesworth v. The Corporation*, 121 F.3d 956, 962 (5th Cir. 1997) (*quoting Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585 (1991)).

Plaintiffs argue that enforcing the forum selection clause will deprive them of their day in court because there is no mechanism under Bermuda law for class actions and it would be prohibitively expensive for each individual consumer to proceed in Bermuda.  Increased cost and inconvenience to Plaintiffs is not a sufficient reason for the Court to decline to enforce a valid forum selection clause.  *See, e.g., Mitsui*, 111 F.3d at 37.

Plaintiffs have presented evidence, however, that Bermuda's consumer protection laws do not have extraterritorial effect -- they do not apply to claims by United States consumers against a United States company.  *See* Declaration of Paul Andrew Harshaw, Exhibit to Plaintiffs' Response, ¶ 38.  This evidence, which has not been controverted by VistaPrint, establishes that enforcing the forum selection clause would deprive Plaintiffs of any claim or remedy against VistaPrint USA.  As a result, it would be unreasonable to enforce the forum selection clause and VistaPrint's Motion to Dismiss under Rule 12(b)(3) is denied.[4]

---

[4]     Similarly, because Bermuda's consumer protection laws would not apply to VistaPrint
(continued...)

## V.   RULE 12(b)(6) MOTION TO DISMISS

### A.   Applicable Legal Standard

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim is viewed with disfavor and is rarely granted. *See Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009). In considering a motion to dismiss under Rule 12(b)(6), a complaint must be liberally construed in favor of the plaintiff and all well-pleaded facts must be taken as true. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 120 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 555). Legal conclusions "are not entitled to the assumption of truth." *Id.* at 1950. Legal conclusions "can provide the framework of a complaint," but they must be supported by factual allegations. *Id.*

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 570), 1950; *Gonzalez v. Kay*,

---

4          (...continued)
           USA's conduct in the United States, the Court denies VistaPrint's motion for the
           Court to apply Bermuda law in this case. *See* Declaration of Paul Andrew Harshaw,
           Exhibit to Plaintiffs' Response, ¶ 38.

___ F.3d ___, 2009 WL 2357015, *2 (5th Cir. 2009) (citing *Iqbal* and *Twombly*).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 556).   The determination of "whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 1950.  "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  *Id.* (quoting FED. R. CIV. P. 8(a)(2)).

In considering a motion to dismiss, a court must ordinarily limit itself to the contents of the pleadings and attachments thereto.  *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (citing FED. R. CIV. P. 12(b)(6)).  "Documents that a defendant attaches to a motion to dismiss are [also] considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim."  *Id.* (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)); *see also Kane Enters. v. MacGregor (USA), Inc.*, 322 F.3d 371, 374 (5th Cir. 2003).  "In so attaching, the defendant merely assists the plaintiff

in establishing the basis of the suit, and the court in making the elementary determination of whether a claim has been stated."  *Collins*, 224 F.3d at 499.

### B. <u>Foundational Allegation of Deceptive Webpages</u>

Plaintiffs allege that Defendants deceptively manipulate the online process by which Plaintiffs ordered business cards from "vistaprint.com."  Plaintiffs allege that they were deceived by Defendants' webpages and believed they could not complete their online purchases unless and until they completed a "survey" and provided their email address.  Plaintiffs' allegation regarding the deceptive nature of the webpages at issue is clearly and unequivocally refuted by the website pages themselves, which are attached to VistaPrint's Motion to Dismiss and are described in detail below.[5]

After completing selections for the design and quantity of the business card order, a consumer proceeds to checkout where payment information is provided.  It is only *after* completing the checkout process that the website pages in issue -- those offering a member program -- appear.  The first webpage, a single page, has at the top "VistaPrint Rewards" and "A special thank you with your purchase from VistaPrint"

---

[5]   For purposes of Defendants' Motions to Dismiss, Plaintiffs do not contest that these pages are accurate copies of what they saw when they purchased their business cards and signed up for the "rewards."  *See* Response at 10 n.2.

offering $10.00 cash back.[6] The consumer is instructed to "complete your survey and claim your reward."

Plaintiffs allege that they were deceived into believing that they could not complete their purchase unless they completed the survey. That allegation is refuted by the *VistaPrint Rewards* webpage, which thanks the consumer for their "purchase from VistaPrint today" and instructs the consumer to complete the survey and registration to claim the $10.00 cash back "on the VistaPrint.com purchase you ***made*** today." (Emphasis added). It is clear from this language that the purchase has already been "made" by the time or the survey request and the cash back offer to the consumer. There is no contradictory language on the webpage.

In the box entitled "2007 Member Survey," the first sentence instructs the consumer to complete the survey and complete the email address information "to claim your $10.00 Cash Back just for trying *VistaPrint Rewards* FREE for 30 days." The only reasonable inference is that the consumer must try *VistaPrint Rewards*, which is free for 30 days, in order to receive the $10.00 cash back. There is no other information on the webpages that would indicate that the $10.00 cash back is for

---

[6] The *VistaPrint Rewards* "Member Rewards" are listed below the quoted language and outside the Survey box. They include savings in the categories of shopping and entertainment, dining, movie savings, and online travel agency categories, each of which is described on the webpage.

anything other than completing the survey, providing the email address, and "trying *VistaPrint Rewards*" free for 30 days.

The three survey questions are then provided in the box.  After the questions and optional responses, the consumer is directed (still inside the box) to enter the email address used to place the order from VistaPrint.  The language inside the box immediately below this instruction and immediately above where the consumer is to enter and confirm the email address, is the following:

> By typing your email address below, it will constitute your electronic signature and is your written authorization to charge/debit your account according to the Offer Details.  By clicking "Yes" I have read and agree to the Offer Details and authorize VistaPrint to securely transfer my name, address and credit/debit card information to *VistaPrint Rewards*, a service provider of VistaPrint.

This clear language advises the consumer *before* the place for entering and confirming the email address that typing in the email address and clicking "Yes" authorizes VistaPrint to charge/debit the consumer's account according to the Offer Details, signifies that the consumer has read and agrees to the Offer Details, and authorizes VistaPrint to transfer the consumer's credit/debit card information to *VistaPrint Rewards*.  Below this language is the place to type in the email address, followed by the place to confirm the email address by typing it a second time.  After the places for the email address, there is a light blue oval with the word "Yes" inside, then the

instruction "Click ONCE and wait."  The alternative choice, "No, Thanks" is at the

bottom of the Survey box.  It is in blue letters and is underlined.

The Offer Details referred to in the Survey box are located immediately beside

the Survey box, and are in the same size and color as most of the print on the webpage

except that the title "Offer Details" is in bold print.  The Offer Details read as follows

in their entirety:

> Simply click "Yes" to activate your trial membership and take advantage
> of the great savings that *VistaPrint Rewards* has to offer plus claim your
> $10.00 Cash Back.  The membership fee of $14.95 per month will be
> charged/debited by *VistaPrint Rewards* to the card you used today with
> VistaPrint after the 30-day FREE trial and then automatically
> charged/debited each month at the then-current monthly membership fee
> so long as you remain a member.  Of course, you can call toll-free at 1-
> 888-243-6158 and speak to a *VistaPrint Rewards* member representative
> within the first 30 days to cancel – you will have paid nothing and owe
> nothing.  Please note that by agreeing to these Offer Details you are
> authorizing VistaPrint to securely transfer your name, address and
> credit/debit card information to *VistaPrint Rewards*, a service provider
> of VistaPrint.  No matter what, the FREE $10.00 Cash Back is yours to
> claim.  Remember, you can call to cancel at any time and you will no
> longer be charged.  If you used a debit card today, then beginning on or
> about 30 days from now, your monthly membership fee for *VistaPrint
> Rewards* will be automatically debited each month on or about the same
> date from the checking account associated with the debit card you
> provided today.

The language is clear and easily understandable by anyone capable of making an

online purchase of business cards.

The webpage containing the Member Survey box and the Offer Details for *VistaPrint Rewards* provides clearly that the offer of the membership program is a "thank you" for the purchase already "made today."  The terms of the membership program, including the transfer of credit/debit card information and the $14.95 monthly charge, are provided under the bold heading "Offer Details" immediately to the left of the Survey box.  In the Survey box, before the consumer is given a place to enter his email address, the consumer is notified that typing his email address authorizes charges to the consumer's debit or credit card "according to the Offer Details" and that clicking "Yes" indicates that the consumer has read and agrees to the Offer Details.

Tellingly, none of the Plaintiffs allege that they read the information above the places for an email address or the Offer Details and was not able to understand the information contained therein.  A consumer cannot decline to read clear and easily understandable terms that are provided on the same webpage in close proximity to the location where the consumer indicates his agreement to those terms and then claim that the webpage, which the consumer has failed to read, is deceptive.  *See, e.g., Pacholec v. Home Depot USA, Inc.*, 2007 WL 4893481, *5 (D.N.J. July 31, 2007); *Tarallo-Brennan v. Smith Barney*, 1999 WL 294873, *3 (S.D.N.Y. May 10, 1999)(rejecting Plaintiffs' attempt to avoid terms of a contract as "deceptive" where

the relevant information was provided in "a clear and legible manner" but Plaintiff did not read the full agreement).  The *VistaPrint Rewards* webpage contains adequate disclosures which, if read by the consumer, prevent the webpage – as a matter of law – from being deceptive.

If the consumer clicks "Yes" on the *VistaPrint Rewards* webpage, he is then shown the second webpage at issue.  At the top, it reads "An Extra-Special Thank You with your purchase from VistaPrint."  The consumer is directed to click "Yes" to claim "ANOTHER $10 Cash Back on the VistaPrint.com purchase you made today when you try *Shopping Essentials+* FREE for 30 days."  The *Shopping Essentials+* savings program is described as offering discounts including department store savings, entertainment and reception discounts, personal and home care savings, and savings on eye care.  As was true with the *VistaPrint Rewards* webpage, the *Shopping Essentials+* webpage includes a box on the right hand side and the Offer Details on the left side next to the box.  The first sentence inside the box directs the consumer to enter the email address he used to place the order from VistaPrint and advises that:

> By typing your email address below, it will constitute your electronic signature and is your written authorization to charge/debit your account according to the Offer Details.  By clicking "Yes" I have read and agree to the Offer Details displayed to the left and authorize VistaPrint to securely transfer my name, address and credit/debit card information to *Shopping Essentials+*.

Only after that disclosure is there a place for the consumer to provide an email address and to confirm the email address by typing it a second time.  As with the *VistaPrint Rewards* Survey box, the box on the *Shopping Essentials+* webpage contains a light blue oval with the word "Yes" inside and the instructions "Click ONCE and wait." There is also the "No, Thanks" option that is smaller, but in blue lettering and underlined.

The Offer Details, with the heading in bold, are located to the immediate left of the box and read as follows:

> Simply click "Yes" to activate your trial membership and take advantage of the great savings that *Shopping Essentials+* has to offer plus claim your $10.00 Cash Back.  The membership fee of $14.95 per month will be charged/debited by *Shopping Essentials+* to the credit/debit card you used today with VistaPrint after the 30-day FREE trial and then automatically charged/debited each month at the then-current monthly membership fee so long as you remain a member.  Of course, you can call us toll-free at 1-877-581-0181 within the first 30 days to cancel – you will have paid nothing and owe nothing.  Please note that by agreeing to these Offer Details you are authorizing VistaPrint to securely transfer your name, address and credit/debit card information to *Shopping Essentials+*.  No matter what, the FREE $10.00 Cash Back is yours to claim.  Remember, *Shopping Essentials+* comes with our guarantee -- you can call to cancel at any time and you will no longer be charged/debited.  If you used a debit card today, then beginning on or about 30 days from now, your monthly membership fee for *Shopping Essentials+* will be automatically debited each month on or about the same date from the checking account associated with the debit card you provided today.

As with the Offer Details on the *VistaPrint Rewards* webpage, the disclosures in these Offer Details are clear and in language that can be easily understood by anyone who is capable of placing an online order for business cards.  Although Plaintiffs allege that the webpage is deceptive, they do not allege that they read the Offer Details and other information provided on the webpage.  Additionally, it appears that at least one named Plaintiff understood the terms of the membership program offer well enough not to click "Yes" on the *Shopping Essentials+* webpage.[7]

Plaintiffs allege that they were deceived by Defendants based on these two webpages.  This alleged deception is fundamental to each claim asserted by Plaintiffs in the Complaint.  A review of the webpages, which are described and quoted in the Complaint, shows that the disclosures and other pertinent information are provided in a clear, prominent, and conspicuous manner.  There are no contradictory messages, and some important disclosures are provided more than once.  There is no allegation that the customer is directed to any webpages after they *Shopping Essentials+* webpage.  The Court's review of the webpages on which Plaintiffs' base their claims convinces the Court without reservation that, as a matter of law, the webpages are not

---

[7]    Plaintiffs Woolley and Hudson accepted only the offer to enroll in *VistaPrint Rewards*, not the offer to enroll in *Shopping Essentials+*.  *See* Consolidated Complaint, ¶¶ 42, 48.

deceptive.  Consequently, and as is discussed more fully below, each of Plaintiffs'

claims must be dismissed.

### C.    EFTA Claim

Plaintiffs allege that Defendants violated the Electronic Funds Transfer Act

("EFTA"), 15 U.S.C. § 1693 *et seq*., when they engaged in "unauthorized electronic

fund transfers" from Plaintiffs' accounts without obtaining prior written authorization.

The EFTA is intended "to provide a basic framework establishing the rights,

liabilities, and responsibilities of participants in electronic fund transfer systems."  15

U.S.C. § 1693(b).

Defendants argue that Plaintiffs Woolley and Gordon cannot maintain an EFTA

claim because the statute does not apply to credit card transactions.  Defendants'

argument on this issue is well-taken.  Charges to a credit card, unlike transactions

using a debit card, do not involve transfers from a consumer's bank account, and the

"EFTA applies to transfers involving a consumer's 'account,' which in turn is defined

as a 'demand deposit, savings deposit, or other asset account . . ..'"  *Sanford v.*

*Memberworks, Inc.*, 2008 WL 4482159, *2 (S.D. Cal. Sept. 30, 2008) (citing 15

U.S.C. § 1693a(2) & (6)); *see also McNair v. Synapse Group, Inc.*, 2009 WL

1873582, *14 (D.N.J. June 29, 2009) (noting that EFTA claim "clearly does not apply

to all class members because only a few used debit cards").  The Court adopts the

logic used in these cases. Because credit cards were used for the challenged transactions, Plaintiffs Woolley and Gordon's EFTA claims are dismissed.

Defendants also argue that all Plaintiffs' EFTA claims should be dismissed because Plaintiffs do not allege facts supporting an "unauthorized electronic fund transfer." The EFTA defines an "unauthorized electronic funds transfer" as a "transfer from a consumer's account initiated by a person other than the consumer *without actual authority to initiate such transfer . . .*." 15 U.S.C. § 1693(11) (emphasis added). The definition specifically excludes "any electronic fund transfer . . . initiated by a person other than the consumer who was furnished with the card, code, or other means of access to such consumer's account by such consumer, unless the consumer has notified the financial institution involved that transfers by such other person are no longer authorized . . .." *Id.*

In this case, it is undisputed that Plaintiffs furnished their card numbers to Defendants to purchase the business cards. As was described in detail above, Plaintiffs typed their email addresses into the spaces provided on Defendants' webpages, thereby authorizing Defendants to "charge/debit [their] account according to the Offer Details." *See* Webpages, attached to VistaPrint's Motion to Dismiss, pp. 51-52. Because the debits to Plaintiffs' accounts were not "unauthorized electronic fund transfers," the EFTA claim must be dismissed.

### D.    ECPA Claim

Plaintiffs allege that Defendants violated the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2510 *et seq*., when they intercepted the transmission of data without Plaintiffs' knowledge, consent or authorization.  The ECPA, often referred to as the "Wiretap Act," imposes liability on anyone who "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication . . .." 18 U.S.C. § 2511(1)(a).  The ECPA provides specifically, however, that it is not a violation of the statute "for a person not acting under color of law to intercept a wire, oral or electronic communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State."  18 U.S.C. § 2511(2)(d).

In this case, Plaintiffs allege that they transmitted data from their computers and "various internet websites."   The only website identified in the Complaint is "vistaprint.com," the website associated with Defendants.  Defendants "merely received the information transferred to [them]" by Plaintiffs, which does not constitute an "interception."  *See Crowley v. CyberSource Corp.*, 166 F. Supp. 2d 1263, 1269

(N.D. Cal. 2001).   In *Crowley*, a case on point and persuasive, the plaintiff sent information via email to Amazon.com, Inc. ("Amazon"), who then conveyed it to Cybersource Corp. ("Cybersource").   The Court held that the plaintiff transmitted the information to Amazon and, when Amazon received the information, the transmission was completed.   There was no "interception" because Amazon merely received information sent to it by the plaintiff.   Likening the situation to one in which a person answers a telephone to receive a call, the California court dismissed the plaintiff's ECPA claim.

Defendants in the case at bar were parties to the communications, receiving the information that Plaintiffs transmitted to them.   As has been discussed fully herein, Defendants did not receive Plaintiffs' electronic communication of their credit/debit card information for the purpose of committing any criminal or tortious act.   Plaintiffs transmitted their credit/debit card information to Defendants and, by "clicking Yes" in the designated spaces on the webpages, authorized VistaPrint to transfer that information.   Defendants have not alleged facts which support an "interception" of electronic communications in violation of the ECPA.   Consequently, the Court grants the Motions to Dismiss the ECPA claim.

E.     <u>Unjust Enrichment Claim</u>

Plaintiffs allege that Defendants have unjustly enriched themselves by accepting money from Plaintiffs that Plaintiffs did not authorize them to receive. *See* Complaint, ¶¶ 68-69.  Defendants seek dismissal of the unjust enrichment claim because Plaintiffs authorized the charges to their credit/debit cards.  As was discussed above, the website as a matter of law is not deceptive and discloses clearly that accepting the "offer" would result in charges to Plaintiffs' credit/debit cards. Consequently, Plaintiffs' unjust enrichment claim must be dismissed.

Additionally, as was discussed above, Plaintiffs entered into an electronic contract with Defendants when they accepted the "offer" available on the websites. The electronic contract provided for Defendants to charge Plaintiffs a monthly membership fee.  There can be no unjust enrichment or other quasi-contractual claim where the parties' dispute is addressed by a written contract.  *See Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000); *Doss v. Homecoming Fin. Network, Inc.*, 210 S.W.3d 706, 709 n.4 (Tex. App. -- Corpus Christi 2006, review denied) (unjust enrichment applies to disputes "where there is no actual contract").[8]  Plaintiffs' unjust enrichment claim is dismissed on this basis also.

---

[8]     The parties do not suggest that there is any material difference in the various state laws regarding Plaintiffs' common law claims.  The parties and the Court, therefore, have cited to Texas law.

**F.      "Money Had and Received" Claim**[9]

Plaintiffs allege that Defendants "improperly received monies from Plaintiffs" for the membership programs.  *See* Complaint, ¶¶ 78-79.  "An action for money had and received arises when the defendant obtains money which in equity and good conscience belongs to the plaintiff."  *Amoco Prod. Co. v. Smith*, 946 S.W.2d 162, 164 (Tex. App. -- El Paso 1997, no pet.) (citing *Austin v. Duval*, 735 S.W.2d 647, 649 (Tex. App. -- Austin 1987, writ denied)).  A claim for money had and received is equitable in nature.  *Stonebridge Life Ins. Co. v. Pitts*, 236 S.W.3d 201, 203 n.1 (Tex. 2007); *Best Buy Co. v. Barrera*, 248 S.W.3d 160, 162 (Tex. 2007).

As was true for the unjust enrichment claim, when there is a valid agreement addressing the issue in dispute, "recovery under an equitable theory is generally inconsistent with the express agreement."  *See Fortune*, 52 S.W.3d at 684. Consequently, Defendants are entitled to dismissal of the money had and received claim based on the existence of an express agreement for Defendants to charge Plaintiffs the monthly fee for the membership programs.

---

[9]      Some authorities hold that claims for "money had and received" are not certifiable as a class action because they require individualized analysis.  *See, e.g., Cyganek v. A.J.'s Wrecker Serv. of Dallas, Inc.*, 2009 WL 1942184 (Tex. App. -- Dallas 2009) (citing *Stonebridge Life Ins. Co. v. Pitts*, 236 S.W.3d 201, 207 (Tex. 2007); *Henry Schein, Inc. v. Stromboe*, 102 S.W.3d 675, 693-94 (Tex. 2002)).

Additionally, as was discussed above, Plaintiffs authorized Defendants to charge the monthly fee and, therefore, the fees do not "in equity and good conscience" belong to Plaintiffs instead of to Defendants.  *See, e.g., Hagerman v. Wells Fargo*, 2006 WL 2448598, *8 (Tex. App. -- Austin 2006, no pet.).  On this basis also, the money had and received claim is dismissed.[10]

### G.    Massachusetts State Law Claim

Plaintiffs allege that Defendants violated § 2 of the MUTPA when they engaged in unfair and deceptive practices.[11]  The statute provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."  Mass. Gen. Laws c. 93a § 2.

---

[10]    Although it is not clear from Plaintiffs' Complaint, there is an indication in the record that Defendants have already reimbursed each of the named Plaintiffs the full amount of monthly fees charged to their credit/debit cards.  If the money has already been refunded, Plaintiffs could not prevail on a money had and received claim.

[11]    A MUTPA claim cannot proceed unless the plaintiff first made written demand.  *See Paoluccio v. Washington Mut. Bank, F.A.*, 2009 WL 2230920, *2 (Mass. Super. June 26, 2009).  "The demand letter is a jurisdictional requirement" for a MUTPA claim.  *Id.*  Defendants argue that Plaintiffs in this case failed to comply with the demand requirement, but Plaintiffs allege in the Complaint that they "made a sufficient demand to Defendants."  *See* Complaint, ¶ 85.  Based on this allegation in the Complaint, the MUTPA claim cannot be dismissed for failure to comply with the written demand requirement.  This claim, however, would not survive a motion for summary judgment if Plaintiffs cannot establish that they complied with the written demand requirement.

Defendants move to dismiss the MUTPA claim because the website is not, as a matter of law, unfair or deceptive.  A defendant's conduct is "deceptive when it has the capacity to mislead consumers, *acting reasonably under the circumstances*, to act differently from the way they otherwise would have acted." *Aspinall v. Phillip Morris Companies, Inc.*, 813 N.E.2d 476, 488 (Mass. 2004).  This standard is more difficult to satisfy than the prior "general public" standard, which included the "ignorant, unthinking, and the credulous who, in making purchases, do not stop to analyze but too often are governed by appearances and general impressions." *Id.* at 487 (quoting *Beneficial Corp. v. Fed. Trade Comm'n*, 542 F.2d 611, 617 n.11 (3d Cir. 1977)).  The current standard depends, instead, on the reaction of a reasonable consumer "rather than an ignoramus." *Id.*

In determining what constitutes deceptive conduct under the MUTPA, courts are to be guided by interpretations of that term in the guidelines of the Federal Trade Commission ("FTC"). *Id.*  The FTC Staff Guidance Document "Dot Com Disclosures:  Information about Online Advertising" ("DCD")[12] requires that disclosures must be "clear and conspicuous" based on the placement of the disclosure on the webpage and its proximity to the other relevant information. *See* DCD, p. 5.

---

[12]     The DCD is available at www.ftc.gov/bcp/edu/pubs/business/ecommerce/bus41.pdf, last visited by the Court on August 28, 2009.

Other factors in determining whether disclosures are clear and conspicuous include the prominence of the disclosure and whether it is stated in language that is understandable. *See id.*

The DCD recommends placing disclosures "near, and when possible, on the same screen as the triggering claim." *Id.* In this case, the disclosures regarding the consumer's written authorization to charge/debit his account and the disclosure that by "clicking Yes" the consumer states that he has read and agrees to the "Offer Details" are located within the box in which the consumer types his email address, confirms his email address by entering it a second time, and clicks either "Yes" or "No Thanks." *See* Representative Webpages, attached to VistaPrint's Motion to Dismiss. The disclosure regarding the monthly membership fee being charged/debited is located immediately next to the box described above. *Id.* There is no need to scroll down the screen or to access a hyperlink to view the disclosures. They are placed in close proximity to the selection box. The language ("The membership fee of $14.95 per month will be charged/debited by *VistaPrint Rewards* to the card you used today. . .") is clear and simple, easily understandable by anyone who reads it. The disclosures are made to the consumer before he decides whether to click "Yes" or "No Thanks." The heading "Offer Details" is in bold print, and the selection box advises

that "clicking 'Yes'" indicates that the consumer has read the "Offer Details."  Most of the print on the page is the same size and in the same color (black).

The disclosures on Defendants' webpages fully comply with the FTC guidelines.  The webpages are not, as a matter of law, unfair or deceptive because they do not have the capacity to mislead reasonable consumers to act in any certain manner.  Plaintiffs have failed to state a claim that is plausible under the MUTPA.

**VI.     CONCLUSION AND ORDER**

The webpages at issue in this case are, as a matter of law, not deceptive.  As a result, and for the reasons discussed more fully herein, it is hereby

**ORDERED** that the Motion to Dismiss [Doc. # 17] filed by Defendants Adaptive Marketing LLC and Vertrue Incorporated and the Motion to Dismiss [Doc. # 21] filed by Defendant VistaPrint USA, Inc. are **GRANTED** as set forth herein.  It is further

**ORDERED** that Plaintiffs' claims against VistaPrint Limited are **DISMISSED WITHOUT PREJUDICE** pursuant to Rule 4(m) of the Federal Rules of Civil Procedure for failure to obtain service of the summons and complaint.

SIGNED at Houston, Texas, this **31**st day of **August, 2009.**

Nancy F. Atlas
United States District Judge